UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **J & J SPORTS PRODUCTIONS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cause No. 1:11-cv-1499-WTL-TAB |
| ) | |
| **LUIS AGUILAR d/b/a** ) | |
| **FANDANGO'S NIGHT CLUB, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### ENTRY ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

This cause is before the Court on the Plaintiff's motion for default judgment. Dkt. No. 23. The Defendants have not responded, and the time for doing so has now passed. The Court now **GRANTS** the Plaintiff's motion to the extent set forth below.

### I. STANDARD

Following entry of default, "the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "[O]nce a default has been established, and thus liability, the plaintiff must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Therefore, on proper application by a party for entry of default judgment, the court must conduct an inquiry in order to ascertain the amount of damages with "reasonable certainty." *Id.*

### II. BACKGROUND

Plaintiff J&J Sports Productions, Inc. ("J&J") purchased the proprietary rights to distribute *Firepower: Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight*

*Program*, which was telecast nationwide on Saturday, November 14, 2009. After purchasing the rights to *Firepower*, J&J entered into sublicensing agreements with various commercial establishments (e.g., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs) to permit public exhibition of the fight. Transmission of the fight was encrypted and made available only to those commercial locations that paid J&J the requisite license fees to show the fight.

Defendants Aguilar and Fandango's, Inc. are the owners of Fandango's Night Club, an establishment with an occupancy of 250 persons operating at 3336 West 10th Street in Indianapolis, Indiana.

Private investigator Thomas G. Newgent entered Fandango's at 11:47 p.m. on Saturday, November 14, 2009.  Newgent was charged a $10.00 cover.  Once inside, Newgent observed a crowd of people seated at tables and moving about the premises. He observed three wall-mounted television screens displaying an HBO pay-per-view boxing match. He also observed another wall-mounted television behind the bar.

At 11:49 p.m., on the bar television Newgent observed a ring announcer introduce fighters Manny Pacquiao and Miquel Cotto and shortly thereafter, he heard a bell ring. Newgent then observed another television in a room with pool tables. Newgent observed the start of round two of the fight between Pacquiao and Cotto on the television in the pool table room at 11:54 p.m.

As Newgent exited Fandango's at 11:55 p.m., he observed the same two fighters on a large, approximately 60" television on the north wall of the main room.

Newgent was unable to obtain a headcount, but he estimates that the crowd was between 150 and 200 persons. He did not observe any flyers or posters in the premises or outside that advertised the fight.

Subsequently, J&J filed this suit against the Defendants, asserting claims for violations of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605, and for state law conversion. J&J then served Defendants with a summons and the complaint on January 11, 2012. The Defendants never appeared or responded to J&J's complaint. On December 3, 2012, the Clerk entered default against the Defendants.

J&J now seeks entry of default judgment under Federal Rule of Civil Procedure 55(b).[1] J&J seeks damages in the amount of $115,200.00. Viewing this request by its component parts, J&J seeks $10,000.00 in statutory damages under § 605; $100,000.00 in enhanced damages under § 605; and $5,200.00 for its state law conversion claim.

### III.   DISCUSSION

J&J originally brought suit pursuant to 47 U.S.C. §§ 553 and 605. "[T]he interception of cable television programming as it travels through the air is to be governed by § 605, while the interception of cable television programming traveling over a cable network (and specifically, the manufacture and distribution of decoder boxes) is to be governed by § 553(a)." *United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996).

Under § 605(e)(3)(C)(i), a claimant may elect actual damages or statutory damages. Statutory damages for each violation of § 605 range from $1,000 to $10,000, as the court considers just. In addition, enhanced damages are available where the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). In such cases, the court may in its discretion increase the award of damages by an amount of not more than $100,000 for each violation.

---

[1] J&J has filed the requisite affidavit of non-military service. Dkt. No. 23-2.

3

Likewise, under § 553(c)(3)(A), a claimant may elect actual or statutory damages. Statutory damages for each violation of § 553 range from $250 to $10,000, as the court considers just. 47 U.S.C. § 553(c)(3)(A)(ii). In addition, enhanced damages are available where the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain. 47 U.S.C. § 553(c)(3)(B). However, under § 553, the upper limit for an increase in damages that a court may award in its discretion is $50,000. *Id.*

Of course, the Plaintiffs argue that full statutory damages should be awarded pursuant to § 605. However, the Plaintiffs have not provided any evidence to the Court regarding the manner in which *Firepower* was broadcast and thus the possible means by which it may have been intercepted; the manner in which cable television programs are broadcast is not otherwise within the realm of judicial notice. Under certain circumstances, then, additional evidence would be needed. Nevertheless, because the damages the Court ultimately considers just under these circumstances fall within the parameters of either statute and the entry of default has established, as a factual matter, that either one or the other statute has been violated, the Court need not definitely determine the applicable statute.

Turning first to actual or statutory damages, in its discretion, the Court imposes the maximum statutory damages award of $10,000. The Court considers this award just in light of three factors: the size of the crowd (150-200 patrons), the cover charge ($10), and the pervasive exhibition of the fight (six televisions).

Turning now to J&J's request for enhanced damages, the Court finds that enhanced statutory damages are inappropriate. Although to some extent the nature of the Defendants' actions may indicate a certain degree of willfulness, *e.g.*, *Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not

descramble spontaneously, nor do television sets connect themselves to cable distribution systems."), there is no evidence that exhibition of the fight was publicized in order to attract patrons, nor is there evidence regarding whether the bar normally charges cover. There is also no suggestion that Fandango's is a repeat offender.

Finally, J&J seeks $5,200.00 for the tort of conversion. As an initial matter, J&J has not submitted any evidence to the Court establishing that this is indeed the fee it would have charged the Defendants. Regardless, additional damages would be inappropriate, as the Court's award of damages under the statute is more than J&J's purported licensing fee. Furthermore, it is not clear that J&J would be entitled to any additional recovery beyond the damages awarded above, as any additional damages may constitute double recovery. *See Medcom Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 230 (7th Cir. 1993) (distinguishing doctrine of election of remedies from "equitable principle that a plaintiff may not recover twice for the same injury"). *Cf. Minix v. Canarecci*, 956 N.E.2d 62, 71 (Ind. Ct. App. 2011) (distinguishing § 1983 claim brought by decedent's mother on behalf of decedent's estate and state-law tort claim brought by decedent's mother on her own behalf).

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** J&J's motion for default judgment. The Court finds an award of $10,000 just under the circumstances. Judgment will be entered accordingly.

SO ORDERED:    07/26/2013

*[signature]*
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

5